## (May 27, 1969)

■ T. & D. GOLF, INC., Respondent-Appellant, v. STATE OF NEW YORK, Appellant-Respondent. (Claim No. 44066.) — STALEY, JR., J. Appeal and cross appeal from a judgment in favor of claimant, entered June 5, 1967, upon a decision of the Court of Claims. In February, 1964 the State appropriated five parcels of land for highway construction. Parcels 242 and 243 on map 109 consisted of .883 acre of the parking area used by the claimant in its operation of a golf course. Parcels 232, 248 and 264 on map 102 consisted of 1.76 acres along the southerly line of the golf course area. Title to parcels 242 and 243 was in the Hancock Golf and Country Club, Inc., and title to parcels 232, 248 and 264 was in the Town of Hancock. On November 3, 1959 the Town of Hancock leased its land to the Hancock Golf and County Club, Inc., and on the same day the corporation subleased the land to August Tacea for development into a golf course which sublease provided: " it being the intention that the Club sublet to Tacea the entire premises which the Club is leasing from the Town of Hancock, together with all appurtenances thereto as described in the agreement from the Town of Hancock to the Club dated November 3, 1959." Thereafter, the sublease was assigned to claimant. Neither the Town of Hancock nor the Hancock Golf and Country Club, Inc., has filed a claim by reason of the appropriation. On the trial the State contended and now contends that the agreement and lease between the Hancock Golf and Country Club, Inc., with August Tacea do not include the land owned in fee by the corporation from which parcels 242 and 243 were appropriated, but include only the land leased from the Town of Hancock. The court determined that it was intended by the agreement and lease to lease all the land owned by the corporation as well as the land under

lease from the Town of Hancock. Although the land leased by the town did not include the land ultimately used by claimant as the practice tee and parking area, title to which was in the Hancock Golf and Country Club, Inc., the only reasonable interpretation of the sublease assigned to claimant requires inclusion in that agreement of the area owned by the corporation for use by claimant in the operation of the golf course. The golf course itself and the clubhouse were constructed upon the land of the Town of Hancock. The practice tee and parking area were constructed upon the land owned by the Hancock Golf and Country Club, Inc., and no objection appears to have been made by the corporation to the use of its land for this purpose. It was essential to the enjoyment of the lease that the tenant of the Country Club have suitable access and parking facilities, and a suitable area for a practice tee. Since these lands were actually improved and put to these uses by the tenant without objection of the landlord and fee owner, we can only conclude that the lease was intended to include the land owned in fee by the Hancock Golf and Country Club, Inc. The State also contends that the award of 25% consequential damages to the remainder of the leasehold was grossly excessive and unwarranted; and that the award of $30,387.65 to the claimant was grossly excessive. The claimant's appraisal expert, William Frevert, arrived at a before value for the fee interests of $175,000 and for the leasehold interest of $125,000 using the capitalization of income method assuming a gross income of $20,000 whereas the maximum gross income according to the testimony had never exceeded $12,000 in the three years the course had been operating. The court properly rejected this testimony on the ground that this estimated income was a matter of speculation and the expenses used by claimant's appraiser were not realistic. Frevert's testimony was wholly inadequate as to valuation, since it was predicated on an improper method of valuation, i.e., capitalization of speculative profits. This witness also testified that adequate parking was an absolute necessity; that 200 cars could be parked prior to the appropriation; that 40 cars would be the maximum after the appropriation; and that this reduction in parking area would cause consequential damages to the remainder of the leasehold in excess of 60%. Little weight can be given to this testimony since on cross-examination he admitted that he made no computation as to the number of cars which could be parked, either before or after the appropriation and, nowhere in his testimony is there found even an opinion as to what would constitute adequate parking for a nine-hole golf course. Sidney M. Marks, a professional engineer and land surveyor called as a witness for the claimant, testified that the original area available for parking was 1.615 acres; that .883 acre was taken by the appropriation and .096 acre would be needed for a driveway, resulting in a loss of 60.5% of the parking area; that adequate parking was vital to the operation of a golf course; that prior to the appropriation, about 180 cars could be parked and after about 40 to 50 cars could be parked. He also gave no testimony as to what would constitute adequate parking facilities. August M. Tacea, secretary-treasurer of the claimant corporation, testified that prior to the appropriation, the parking area was sufficient for 200 to 250 cars; that after the taking, he would have trouble parking 50 cars; that membership of the course had started at 50 and reached a high of 83; that on an average weekend during July and August there were 100 to 125 players on the course; that part of the remaining area was sloped and he could not park cars there. He also gave no testimony as to what would be deemed adequate parking facilities for a nine-hole golf course. Paul Kern, a professional golfer and a partner in a golf course in Broome County, testified on behalf of the claimant that the cost of constructing a golf hole on the subject

property was $15,000 to $20,000 per hole; that parking facilities are a necessary attribute to a golf course; that the parking area prior to the appropriation was adequate; that the taking from the parking area has adversely affected the property; and that the course itself was still as playable as prior to the appropriation. He also gave no opinion as to what would be considered an adequate parking area. The State's appraiser, John Kanazawich, testified to a before value of $115,300 and an after value of $111,770 and computed damages at $3,530. In arriving at his valuations he broke up the property into two parts by reason of the separate ownerships of the underlying fee titles. Using comparables he valued the land owned by the Town of Hancock at $300 per acre, and the land owned by the County Club at $2,000 per acre. To this he added $7,000 for the improvements of each green or hole for a total of $63,000, $11,100 for the depreciated value of the clubhouse, $2,500 for other improvements, and $200 for a septic field. He found no consequential damages to the remaining lands and considered only the parking area to be consequentially damaged. This determination was apparently based, at least in part, upon his opinion that a grassy area which could accommodate 110 cars was not used for parking purposes, and there remained a graveled parking lot which in his opinion could handle about 62 cars which he considered adequate. On cross-examination he admitted that curtailment of a parking lot could decrease the value of a clubhouse and golf course. He further admitted that a 50% loss of necessary parking would result in a 20 to 25% consequential damage to the total property. This estimate of damage was based on the assumption that it was necessary to have the total parking area before the taking for the operation of the golf course, and that the total parking area before the taking was being utilized as necessary for the club's operation. Although he testified that adequate parking remained, it was not established that he was qualified to determine what would be an adequate parking area or how many cars could be parked in a given area. His testimony was mainly based on his background and experience as a real estate expert with no experience in golf course development or management and thus purely subjective. Hal C. Purdy, a golf course architect, called as a witness for the State, testified that $7,000 was a fair estimate of the cost of construction of a hole such as the ones on the subject property, and that adequate parking remained after the appropriation. On cross-examination he admitted that if 50% of the required parking was eliminated, this would adversely affect the remaining property, but stated that in the instant case there was no such reduction in the parking area. Although he would appear to be qualified to state what area is required for an adequate number of parking spaces for a nine-hole golf course, he gave no testimony as to the parking requirements of comparable golf courses. Vincent J. Cavanaugh, the project engineer for the State, testified that after the appropriation about 50 cars could safely be parked in the parking area and with changes possibly 80 or 90 cars. No testimony was elicited, however, as to the possible costs of the necessary changes or what effect such changes would have upon the remaining property. The court determined the before value of the entire property to be $152,000 and the after value to be $112,016.25, computing direct damages at $2,645 and consequential damages at $37,338.75. In arriving at its before value the court allocated $500 per acre to the 82.25 acres owned by the town; $2,000 per acre to the 2.75 acres owned by the Country Club; $13,000 as the depreciated value of the clubhouse; $10,000 to each hole of the golf couse or $90,000, and $2,500 to other improvements. The valuation of $500 per acre for the land owned by the town was $200 more than the valuation testified to by the only expert witness who gave competent testimony in regard

to this item. Consequential damages were awarded at 25% of the whole property by reason of loss of 50% of the parking area, but the testimony indicates that such damages would arise only in the event that the required parking area was reduced 50%, and there is no competent evidence in the record indicating what would be considered to be a required parking area. The valuation of the leasehold interest was computed by taking the total reversion value of $146,000 which was then multiplied by .2377 based on a 6% present worth factor of a leasehold interest outstanding for 24 years and 8 months. Claimant's leasehold interest was found to be 76% which, when applied as the multiplier to the amount of direct and consequential damages as found by the court, resulted in an amount of $30,387.65 as direct and consequential damages for the claimant. While it would be possible for this court to recompute the before and after values of the subject property and the direct damages by reason of the appropriation, it is not possible to determine on this record the amount of consequential damages, if any, to the entire property by reason of the lack of competent evidence as to the number of parking spaces required for a comparable nine-hole golf course or the possibility of enlarging the present parking area, which was in large part no more than a grassy area, and the probable cost of such enlargement. Judgment reversed, on the law and the facts, and case remanded to the Court of Claims for a new trial, without costs. Gibson, P. J., Herlihy, Reynolds, Staley, Jr., and Greenblott, JJ., concur in memorandum by Staley, Jr., J.